IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD VOLGRAF,<br>*Plaintiff* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : <br> : | |
| GARRISON PROPERTY AND<br>CASUALTY INSURANCE COMPANY,<br>*Defendant* | : <br> : <br> : | No. 21-1394 |

## MEMORANDUM

PRATTER, J.                                                                                                                                      APRIL 15, 2021

Richard Volgraf sustained severe and permanent head and back injuries after the car he was driving was struck. At the time of the accident, Mr. Volgraf had insurance coverage under a policy issued by Garrison Property and Casualty Insurance Company. Because the extent of Mr. Volgraf's injuries exceeded the offending driver's bodily injury policy coverage limits, he demanded payment of underinsured motorist benefits from Garrison under his own policy. Nearly two years after the initial demand, Garrison offered only a fraction of what Mr. Volgraf believes he is legally entitled to. So, Mr. Volgraf is suing for breach of contract and statutory bad faith.

Garrison moves to dismiss only the bad faith claim. For the reasons that follow, the Court denies the motion.

### BACKGROUND

As a result of the accident, Mr. Volgraf alleges he sustained serious and permanent injuries including a traumatic brain injury, injury to multiple discs in his back, and post-concussion syndrome. Doc. No. 1-3 (Compl.) ¶¶ 27-28. Based on his injuries, he provided notice to Garrison of his intent to seek underinsured motorist benefits under his policy. His policy provided for underinsured motorist benefits totaling $900,000.00—heightened coverage in exchange for which

1

he paid increased premiums. *Id.* ¶¶ 14-15. Mr. Volgraf sent his initial demand in October 2018. *Id.* ¶ 16.

Along with his initial formal demand, Mr. Volgraf alleges that he also submitted relevant medical records and reports. *Id.* He contends that he complied in all other respects with the terms and conditions of the policy, including supplementing his initial submission of documents with updated records and expert reports that set forth the extent of his injuries, estimated costs of care of $289,692.80, and estimated total loss of earnings of $854,033.00. *Id.* ¶¶ 17-20, 22.

Garrison allegedly promised an evaluation of Mr. Volgraf's claim by the end of May 2020 as well as an offer. Neither were provided to him despite repeated follow-ups. Instead, in September 2020—roughly 20 months after the initial demand—Garrison offered Mr. Volgraf $75,000. *Id.* ¶ 26. The wide disparity between Mr. Volgraf's demand and Garrison's offer prompted this case.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To provide a defendant with fair notice, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Third Circuit Court of Appeals instructs the reviewing court to conduct a two-part analysis. First, any legal conclusions are separated from the well-pleaded factual allegations and disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines whether the facts alleged establish a plausible claim for relief. *Id.* at 211.

To that end, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Id.* at 210. If the court can only infer "the mere possibility of misconduct," the complaint has failed to show an entitlement to relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## DISCUSSION

Garrison moves to dismiss Count II of the Complaint, alleging statutory bad faith by an insurer. 42 Pa. C.S. § 8371. It contends that the Complaint lacks the particularity required to state a claim and contains only conclusory allegations of bad faith. The Court cannot agree.

Under Pennsylvania law, to recover on a bad faith action against an insurer, a plaintiff must establish by clear and convincing evidence both "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017); 42 Pa. C.S. § 8371. The Third Circuit Court of Appeals has expressed that "mere negligence or bad judgment is not bad faith." *Canfield v. Amica Mut. Ins. Co.*, No. CV 20-2794, 2020 WL 5878261, at *4 (E.D. Pa. Oct. 2, 2020) (quoting *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)). Rather, bad faith in this context means a "frivolous or unfounded refusal to pay proceeds of a policy . . . a breach of a known duty . . . through some motive of self-interest or ill will." *Babayan*, 430 F.3d at 137.

The allegations as currently pled are at least sufficient to support a bad faith claim. To be sure, district courts in this Circuit, including this Court, "have routinely dismissed bad faith claims reciting only 'bare bones' conclusory allegations unsupported by facts sufficient to raise the claims to a level of plausibility." *Satterfield v. Gov't Ins. Emps. Co.*, No. CV 20-1400, 2020 WL 7229763, at *2 (E.D. Pa. Dec. 8, 2020) (collecting cases). And, a "low ball" offer does not, by itself, amount to bad faith. *Canfield*, 2020 WL 5878261, at *4; *Johnson v. Progressive Ins. Co.*, 987 A.2d 781,

3

785 (Pa. Super. Ct. 2009) (an insurer's "failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith"). But the Complaint in its present iteration alleges more than boilerplate legal conclusions and a "normal dispute" between insurer and insured.

Garrison does not appear to dispute that Mr. Volgraf's policy provides up to $900,000 in underinsured motorist benefits or that Mr. Volgraf agreed to pay heightened premiums in exchange for these increased benefits. Nor does the insurer suggest that Mr. Volgraf was somehow at fault or negligent in causing the accident. As a result of his allegedly permanent injuries, he pleads that he will forgo approximately $850,000 in earnings, and that his estimated cost of care alone is roughly five times the amount offered by Garrison. Construing these allegations as true, as the Court must, Mr. Volgraf's estimated damages are many orders of magnitude greater than Garrison's offer. Taken together, the Complaint plausibly establishes a bona fide claim that Garrison lacked a reasonable basis to deny benefits. *Davis v. Nationwide Mut. Ins. Co.*, 228 F. Supp. 3d 386, 389 (E.D. Pa. 2017) ("unreasonably low" offer given loss of work and cost of treatment adequately pled bad faith).

The Court also has enough facts to plausibly infer that Garrison knew or recklessly disregarded a lack of a reasonable basis to deny benefits. *See Pasqualino v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 15-0077, 2015 WL 3444288, at *5 (E.D. Pa. May 28, 2015). Chief among them is the delay between Mr. Volgraf's initial demand and Garrison's onetime offer. "Delay is a relevant factor in determining whether bad faith has occurred." *Padilla v. State Farm Mut. Auto. Ins. Co.*, 31 F. Supp. 3d 671, 676 n.8 (E.D. Pa. 2014). Mr. Volgraf pleads a delay of nearly two years from the initial demand and over three years from the injury. Moreover, within that period, Mr. Volgraf alleges that Garrison promised to evaluate him but never did, nor did the insurer allegedly provide an explanation for its nonfeasance.

The Court is satisfied that Mr. Volgraf has met his burden of pleading a statutory bad faith claim. To be sure, the facts adduced in discovery may establish that Garrison did not act in bad faith. But it is not Mr. Volgraf's burden to prove his claim at this stage of the proceeding. Accordingly, the Court denies Garrison's motion to dismiss Count II.

## CONCLUSION

For the reasons set out in this Memorandum, the Court denies Defendant's motion to dismiss Count II. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE